FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 9 2025

TAMMY H. DOWNS, CLERK
By: _____
LAINTIFF DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**DR. JOHN ALOYSIUS**

**VS.**                    CASE NO. 4:25-cv-413-LPR

**BOARD OF TRUSTEES OF THE UNIVERSITY
OF ARKANSAS; DR. BRIAN FUGATE; DR.
MATTHEW WALLER, and DR. BRENT
WILLIAMS, each in their Individual Capacities**          **DEFENDANTS**

## COMPLAINT

COMES NOW THE PLAINTIFF, **DR. JOHN ALOYSIUS**, by and through counsel,

**SUTTER & GILLHAM, P.L.LC**.; and, who, for his Complaint, states:

## PARTIES AND JURISDICTION

1.      Plaintiff is a resident and citizen of Arkansas, who works for Defendants in

Arkansas.

2.      The Board of Trustees of the University of Arkansas (hereafter "UA") is

government agency of the State of Arkansas created under its Laws and Constitution, specifically

Ark. Code Ann. 6-64-202.  The Board of Trustees for UA sets the policies under which all

Universities in the UA system are operated.

3.      Dr. Brian Fugate, Dr. Matthew Waller, and Dr. Brent Williams, are all person(s)

employed by the Board of Trustees of the University of Arkansas, who made employment

decisions about Plaintiff's pay and the terms and conditions of employment and, who work in

Arkansas.  They are sued in their individual capacities.  The Members of the Board are drawn from

across the State, and UA is headquartered in Little Rock, Pulaski County, Arkansas, which is where

its President and General Counsel are located.  UA has campuses throughout the State, including

This case assigned to District Judge Rudofsky
and to Magistrate Judge Moore

in Little Rock, Pulaski County, Arkansas. Thus, if suit were brought in State Court, venue would

be appropriate in Pulaski County, Arkansas under Ark. Code Ann. 16-106-101(d).

4.      This actions brought under Title VII and 42 USC 1983, for an amount exceeding

that required for diversity jurisdiction. Based on these facts, there is Federal question jurisdiction,

personal jurisdiction, and venue is proper.

## FACTS

5.      Plaintiff began working for Defendant in August of 1995.

6.      Plaintiff has a Ph.D. since 1996 from Temple University in Philadelphia, in

Management Science and Operations Management, and is a tenured professor.

7.      Plaintiff was made a full Professor in 2017 in the Department of Supply Chain

Management in the College of Business.

8.      Plaintiff is a naturalized American citizen of Asian descent, from Sri Lanka

originally, and is  brown in color and is 60 years old.

9.      Over the last thirteen (13) years, Plaintiff has noted that he is paid substantially less

then Caucasian tenured full Professors in the same college, who report to the same department

head, who are more than ten (10) years younger than him; and, who are originally from the United

States of America.  These individuals have not been with the college for as long as the Plaintiff

has less experience, and their publications are outstripped by his.

10.     Compensation for all Professors in this college and department is governed by the

same rules, policies, and procedures.

11.     In the period of March and April, of 2024, Plaintiff grew tired of the pay

discrepancy.  So, he requested a review of his wages to be raised to a similar amount for other

professors of similar or less education, experience, and accolades.  He then made a package and

presentation establishing his qualifications, and provided evidence to show that, not only the need to be paid as much as the other individuals, but that he deserved to be paid more. His most recent performance evaluation was exceptional. In the package, there was evidence that showed a publication record that was superior in terms of both quantity and quality, a record of national and international professional awards and recognitions, and a superior record of research mentoring.

12.  Since that time, Plaintiff has suffered retaliation.

13.  Plaintiff has been removed from committee and role assignments. When pay and promotions are considered in the academic world, one's service to the community, and roles occupied are considered in determining value and pay. So, removal of Plaintiff from these positions impacts his ability to justify raises in the future, damages his prestige, and interferes with opportunities he might have elsewhere if he chose to change institutions.

14.  Plaintiff was denied the right to stand for an elected position at his college in May of 2024 on the College Promotion & Tenure Committee, even though he was the Chair. This is a very prestigious position.

15.  Plaintiff was undertaking the position of center director related to Artificial Intelligence and Decision-making and his Dean changed the goals for that project to make it more difficult to achieve success, with terms that would kill it if it were not self-funding in a short period of time. In this day and age why, someone would attempt to deter research onto an issue as significant as artificial intelligence is unimaginable. This initiative would provide the college with considerable visibility and funding.

16.  Plaintiff's pay continues to this day to be between $50,000 and $100,000 less than less qualified full Professors in his college under his Department Chair. No justification for the disparity or remedy has been offered.

17. Plaintiff's pay was $200,371.00 in 2022, $206,382.00 in 2023, $210,501.00 in 2024, and $216,825.00 for 2025.

18.    Professor Waller, a Caucasian from the United States, who made full Professor in 2007, and made $377,208.00 in 2022, $388,532.00 in 2023, and $400,180.00 in 2024.

19.    Professor Fugate, a Caucasian from the United States, who made full Professor in 2018, and made $232,727.00 in 2022, $239,708.00 in 2023, $256,500.00 in 2024, and $264,195.00 in 2025.

20.    Professor Dobrzykowski, a Caucasian from the United States, who made full Professor in 2023, made $196,910.00 in 2022, $202,817.00 in 2023, $251,050.00 in 2024, and $258,581.00 in 2025.

21.    Associate Professor Thomas, a Caucasian from the United States, who is at a lower level than Plaintiff, Aloysius, made $191,945.00 in 2022, $197,703.00 in 2023, $203,634.00 in 2024, and $209,743.00 in 2025.

22.    There are no rules, practices, or procedures which would not permit or militate toward Plaintiff not running for the Tenure Committee. In fact, it violates college rules for Plaintiff to have been prohibited. Plaintiff has sought explanations from Defendants to justify the pay disparities and retaliatory adverse acts, and Defendants have failed to proffer a legitimate, non-discriminatory reason.

23.    Defendant, Brian Fugate, has been Department Head since around 2016-2017.

24.    Defendant, Brent Williams, became the Dean in, or around, January 2024, and was acting as Dean in, or around, 2023. He was one (1) of Plaintiff's only three (3) Department Heads since 2011.

25.     Defendant, Matt Waller, was Dean in, or around 2016, and was replaced by Defendant, Brent Williams. He was also Plaintiff's Department head for one (1) year or so.

26.     These people have worked together and known each other for a long time. Defendant, Williams, was Defendant, Waller's student in the early 2000s. They are setting Dr. Aloysius's pay together. Again, all are from the United States originally, all are Caucasian, and Defendants, Fugue and Williams, are in their late forties (40's).

27.     Department Heads have the primary input on pay, making recommendations, and the Dean makes a final decision.

28.     Plaintiff has filed a charge of discrimination covering these claims within one hundred-eighty (180) days; and, now, files suit less than ninety (90) days after receipt of a Right to Sue letter.

## COUNT I

29.     Plaintiff restates the foregoing as if fully stated herein.

30.     By virtue of the facts alleged herein, Defendant, UA, has violated Title VII, by denying equal pay and retaliating against Plaintiff.

31.     As a result of Defendant UA's actions, Plaintiff has lost pay, lost earning capacity, and endured mental, emotional, and physical suffering, as well as embarrassment and repetitional injury, such that backpay and compensatory damages should be awarded.

## COUNT II

32.     Plaintiff restates the foregoing as if fully stated herein.

33.     By virtue of the facts alleged herein, each individual capacity Defendant has violated 42 USC 1983, by discriminating against Plaintiff based on his race, color, and national origin, in violation of his rights to Equal Protection under the United States Constitution.

34.    As a result of the individual capacity Defendants' actions Plaintiff has lost pay, lost earning capacity, and endured mental, emotional, and physical suffering, as well as embarrassment and repetitional injury, such that backpay and compensatory damages should be awarded.

35.    The law is clearly established that employment discrimination based on race, color, and national origin violates equal protection rights, and there are university policies expressly forbidding this, which the individual capacity Defendants know and have been trained on this. This is the product of a sustained group effort.  Defendants failed to take any corrective action when the issue was brought to them, and in fact doubled down, by beginning retaliation efforts. Thus,  the individual capacity Defendants' actions have been in willful, malicious, reckless, and intentional violation of Plaintiff's rights to equal protection, meriting an award of punitive damages.

## JURY DEMAND

36.    Plaintiff demands a trial by jury.

## PRAYER

WHEREFORE,  PLAINTIFF,  **DR.  JOHN  ALOYSIUS**,  PRAYS  FOR  THE FOLLOWING RELIEF:

Back pay, front pay or a raise, removal of any prohibition against running for any elected office he is otherwise eligible for, restoration to positions from which he has been removed, an apology, the opportunity to advance his career with the positions and resources for success, posting of this lawsuit and any verdict and judgment at prominent locations in the College of Business, an Order forbidding further retaliation, a positive reference, a prohibition against negative references, training for the persons who have been sued individually, compensatory damages, punitive damages against the individual capacity defendants, all in an amount in excess of that required for

diversity jurisdiction, a declaration that plaintiff has been discriminated against, other injunctive

and declaratory relief, reasonable attorneys' fees and costs, and a jury trial on all matters so triable.

Respectfully submitted,

**SUTTER & GILLHAM, P.L.L.C.**
Attorneys at Law
1501 N. Pierce, Ste. 105
Little Rock, AR 72207
501/315-1910  Office
501/315-1916  Facsimile
Attorneys for the Plaintiff

By:    _/s/ Lucien R. Gillham_
Lucien R. Gillham, Esq., ARBN 95-031
lucien.gillham@gmail.com